IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN B. GOKAY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 12-2140 |
| | : | |
| JOHN J. GEORGE, et al., | : | |
| Defendants | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                                                                                                  February 20, 2013

      Plaintiff Karen Gokay brings this action against her former employer and its Executive Director alleging employment discrimination based on sex and retaliation.[1] The defendants filed a partial motion to dismiss. For the following reasons, I will deny the motion.

## I. BACKGROUND[2]

      The Berks County Intermediate Unit is a state-created agency providing services to public and non-public schools throughout Berks County. Miss Gokay began her employment there in 1999, and rose to the level of Director of Human Resources and Public Relations before her termination in October 2010. While at the Unit, Miss Gokay

---

[1] The plaintiff brings these claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 955(a), *et seq.* While Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-1084 (3d Cir. 1995).

[2] The facts are gleaned from the amended complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in her favor.

allegedly enjoyed a reputation for excellent job performance and integrity.

During the summer of 2010, Elton Butler, the Assistant Director of Human Resources, announced his retirement. Typically, as the Director, Miss Gokay would have advertised and interviewed candidates to fill Mr. Butler's position. However, Defendant Dr. John J. George, the Executive Director of the Unit, notified Miss Gokay that there would be no interviews and that the position would go to Robin Rosenberry, a male colleague and friend from Defendant George's previous place of employment. Miss Gokay found the selection of Mr. Rosenberry peculiar because Mr. Rosenberry had no advanced degree which is typically required for positions of that level. Dr. George had previously told the plaintiff several times that he had hoped Mr. Butler would retire so that Mr. Rosenberry could replace him.[3]

At some point after beginning his employment, Mr. Rosenberry suspected that someone was rifling through his desk and improperly assessing his files. Instead of utilizing the proper chain of command, Mr. Rosenberry complained directly to Defendant George. The two allegedly devised a "trap" in which a video camera would be secreted in the office and the perpetrator caught. Miss Gokay alleges that, without her knowledge, she was the target of the trap. As Mr. Rosenberry's direct supervisor, Miss Gokay should have been able to access freely anything on his desk or in his files. The video camera footage showed that a custodian was the culprit. Miss Gokay first learned of the existence of the video camera and the trap when the custodian's supervisor unknowingly

---

[3] In fact, Miss Gokay alleges that it had always been Dr. George's plan to hire Mr. Rosenberry, then fire Miss Gokay under a pretext situation so that Mr. Rosenberry could replace her as the Director of Human Resources.

came to her to apologize for the behavior of the custodian.

In October 2010, Miss Gokay was terminated for what she characterizes as a pretext for illegal discrimination. Before Dr. George became the Executive Director of the Unit, the plaintiff reported to Dr. Nancy Allmon, the previous Executive Director. The vacation policy had always been that the directors began to earn vacation benefits after being hired, and the benefits would be awarded on July 1 of each year. Dr. Allmon allegedly changed the policy when Stanley Kita, the Assistant Executive Director of the Unit, was hired. Dr. Allmon decided to award him vacation up front as soon as he was hired, rather than have him earn it. In 2002, Dr. Allmon extended the policy to all directors hired after Mr. Kita in 2002. Miss Gokay worked alongside Dr. Allmon to change the vacation policy, drafting its new language. Those hired before 2002, including the plaintiff, remained with the previous policy of "earning" their vacation leave.

On September 14, 2010, Miss Gokay was called to a meeting with Defendant George to discuss a challenge to the vacation policy brought by Mr. Kita. Mr. Kita was planning to retire but realized that he would not be entitled to a payout for his "earned" vacation leave upon retirement, because the "new" policy awarded vacation time before it was actually earned. Upon learning of this situation, Defendant George accused Miss Gokay of unilaterally changing the Unit's vacation policy and incorporating language in compensation and benefits plans without the Board's approval. Miss Gokay insisted that the policy was accomplished under the direction of Dr. Allmon but admitted she had drafted the vacation language. However, Defendant George told the plaintiff that Dr.

3

Allmon did not remember authorizing any change in vacation policy.

On September 15, 2010, Defendant George placed Miss Gokay on unpaid administrative leave for changing the vacation policy, even though she was allegedly directed by the former Executive Director to do so. She was terminated the following month.

The amended complaint alleges that Miss Gokay was treated like a criminal upon termination, being handed a box of her personal belongings packed by someone else, and escorted out of the building in front of other employees. Lower level employees were told about the circumstances of Miss Gokay's termination, which damaged her reputation. Other male employees, including those who committed fraud, were allowed to retire graciously, even given retirement parties, and the details of their terminations kept private.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all plausible inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff

to plead in detail all of the facts upon which she bases her claim. Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). In recent rulings, however, the Supreme Court rejected language in Conley which stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561. Rather, a "complaint must allege facts suggestive of [the proscribed] conduct," id. at 564, and it must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In assessing the merits of a motion to dismiss, courts must be careful to recognize that, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. In recognition of these principles, courts must first identify those allegations in a complaint that are mere conclusions and are therefore not entitled to the assumption of truth, and next, consider whether the complaint's factual allegations, which are entitled to a presumption of truth, plausibly suggest an entitlement to relief. Id.

"Rule 8 marks a notable and generous departure from the hyper-technical, code-

pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." Id. (quoting FED.R.CIV.P. 8(a)(2)).

In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

**III. DISCUSSION**

The defendant moves for the partial dismissal of the amended complaint arguing that it alleges discriminatory and retaliatory employment actions that occurred outside of the 300 day limitation period for filing a claim with the EEOC,[4] and the 180 day limitation period for filing a claim with the Pennsylvania Human Relations Commission.[5] The plaintiff counters that any such actions were properly included solely for background purposes.

The employer's conduct in question is presented in several detailed paragraphs of

---

[4] See 42 U.S.C. § 2000e-5(e)(1) (Title VII claims must be filed 300 days from the date of the adverse employment decision.

[5] See 43 P.S.C. § 959(h) (PHRA claims must be filed 180 days from the date of the adverse employment decision.

the amended complaint dedicated to allegations of sexual discrimination and retaliation which occurred in 2008, well outside of the limitation period for both statutes.  See Am. Compl. ¶¶ 19-56.  These paragraphs are presented in the amended complaint under the heading, "<u>June 10, 2008 Sexual Discrimination Complaint and Retaliation *as Background to Amended Complaint*</u>" (emphasis in original).  This potentially actionable conduct of the employer began in June 2008 when, on an Annual Employee Questionnaire completed pursuant to the 2007-2008 evaluation process, Miss Gokay made an allegation of sexual discrimination against the Unit.  She claimed that she had been the victim of an inaccurate performance evaluation wherein Mr. Kita called her a "drama queen" and questioned her ability to communicate.  Miss Gokay further claimed that similar behavior of male administrators had been explained away as a "style issue" or the product of their experience in the private sector.  While it was permitted for male administrators to be vocal and strident in their views and communications, it was allegedly not permitted for her as a female administrator.

Upon receipt of the questionnaire, Mr. Kita informed the plaintiff that he would not meet with her for her annual review until an investigation of her allegations of a "hostile work environment" had been conducted.  The Levin Legal Group investigated, but rather than confirm Miss Gokay's allegations, the resultant report criticized her.  The report allegedly made it very difficult for the plaintiff to continue to work at the Unit.  Defendant George told Miss Gokay that he would be monitoring her performance to see if there was any truth to Mr. Kita's evaluation of her.

Miss Gokay subsequently wrote a memorandum to Dr. George, attempting to

rebut the findings of the Levin Legal Group's investigation, and reiterating her allegations of sexual discrimination. Thereafter, Mr. Kita allegedly refused to speak to Miss Gokay or to treat her as a colleague, behavior which Miss Gokay characterized as "noticeably hostile" and "antagonistic." Paragraph 54 of the amended complaint outlines Mr. Kita's alleged conduct toward Miss Gokay during this period of time:

> "a. accusing Plaintiff of wrongdoing associated with a medical leave of absence;
>
> b. excluding Plaintiff from events to which all other Cabinet-level administrators were invited; and that she would have been invited to in the past;
>
> c. noticeably shunning Plaintiff in Cabinet meetings;
>
> d. bypassing Plaintiff in making decisions relative to a Transportation Department employee's return to work from a medical issue;
>
> e. directing Operations employees to ignore Plaintiff's requests for modifications to the HR suite of offices without communicating this decision to Plaintiff;
>
> f. undermining Plaintiff, subsequent to a meeting with union representatives by unilaterally rending a decision, inconsistent with what had been agreed to in a meeting between Plaintiff and said union representatives."

See Am.Compl. ¶ 54. Miss Gokay further alleges that Defendant George knew of and condoned Mr. Kita's unlawful actions. Id. ¶ 56. Nevertheless, Miss Gokay continued to discuss these allegations with Dr. George, but to no avail. Dr. George allegedly ignored her and responded with suggestions to "just hang in there" and "be patient" in anticipation of Mr. Kita's retirement. In fact, the amended complaint alleges that Dr. George never took the plaintiff's allegations seriously.

Initially, I note that it would not be unreasonable to expect that Miss Gokay would have filed a Charge of Discrimination before the limitations period on these claims expired, if she believed that she had been discriminated against at the time these actions occurred. Instead, Miss Gokay dually filed a Charge of Discrimination with the PHRC and the EEOC on January 25, 2011, over two years later.

Title 42 of the United States Code, Section 2000e-5(e)(1) is a Charge filing provision that "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit. Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974). An individual must file a Charge within the statutory time period and serve notice upon the person against whom the Charge is made. A claim is time-barred if it is not filed within these time limits. "Strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 108 (2002) (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)). "By choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." Id. Based on Miss Gokay's dual filing on January 25, 2011, the 300 day limitation period for filing an EEOC claim of discrimination began to run on March 31, 2010; and the 180 day limitation period for filing a PHRC claim of discrimination began to run on July 29, 2010. Accordingly, the allegations stemming from the 2008 questionnaire fall outside of the limitation periods and cannot form the basis of claims asserted in this amended complaint.

The defendant insists that Miss Gokay's allegations of being treated differently

9

from her male colleagues during the 2007-2008 year and the resultant retaliation should be dismissed as having fallen outside the limitations period. The plaintiff argues that those allegations were included in the amended complaint solely to provide background.[6]

The Supreme Court of the United States has held that an employee may include in her complaint an employer's prior acts as background evidence in support of a timely claim of discrimination. See Morgan, 536 U.S. at 113. Here, Miss Gokay presents in great detail a situation she faced at work beginning in 2007 during which she felt discriminated against because of her gender, and retaliated against because she complained about the discrimination. Unfortunately for Miss Gokay, discrete discriminatory acts[7] are not actionable if time-barred, even when they are related to acts alleged in timely filed charges. Mikula v. Allegheny County, 583 F.3d 181, 185-186 (3d Cir. 2009) (citing Morgan, 536 U.S. at 113).

Nevertheless, the paragraphs detailing the employer's prior conduct were presented under a hearing characterizing the conduct as background. Many of these allegations are repeated under the specific counts to add context to the employer's timely conduct. For example, under Count One, it is alleged that "Defendant George's refusal to intervene in Kita's discriminatory actions and his permissive attitude towards Kita's sex

---

[6] I note that in its motion to dismiss, the defendant anticipated that the plaintiff would respond claiming a continuing violation theory to explain the inclusion of this untimely conduct. Instead, the plaintiff insisted that the allegations stemming from the 2008 questionnaire were included solely to provide background for the timely allegations.

[7] Based on the Supreme Court's decision in Morgan, the Third Circuit Court of Appeals provided the following non-exhaustive list of discrete acts for which the limitations period runs from the act: termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation. O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).

based discrimination aided and abetted these actions." See Am.Compl. ¶ 156. While Defendant George's alleged conduct immediately following the 2008 questionnaire is untimely and thus not actionable, the plaintiff has the opportunity to present that scenario as a backdrop to her allegedly illegal termination. See Morgan, 536 U.S. at 113. Likewise under Count Two, it is alleged that "Plaintiff engaged in a protected activity when she complained of sex discrimination in 2008. Plaintiff engaged in a protected activity when she subsequently reported the discriminatory and retaliatory actions of Dr. George and Mr. Kita that occurred after Plaintiff's 2008 sex discrimination complaint." See Am.Compl. ¶¶ 160-161. In pleading retaliation,[8] the plaintiff must first show that she had engaged in protected activity, which includes bringing a complaint about discrimination.

Under these circumstances, I agree that the references to the time-barred conduct of the employer are included solely for background purposes. While the amended complaint pleads sufficient allegations surrounding Miss Gokay's termination to support her claims of gender-based discrimination and retaliation, the employer's prior conduct is permitted to provide context to those allegations. Accordingly, I will deny the defendant's motion to dismiss.

An appropriate Order follows.

---

[8] To establish a *prima facie* claim for retaliation, the plaintiff must prove three elements: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 286 (3d Cir. 2001).